**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **JOANN KOLNBERGER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.** |
| v. | ) | |
| | ) | |
| **SELECT PORTFOLIO SERVICING,** | ) | |
| **INC.** | ) | **Trial by Jury Demanded** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Joann Kolnberger, by and through counsel, for her Complaint against Defendant

Deutsche Bank National Trust Company, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Joann Kolnberger ("Kolnberger" or "Plaintiff") is the owner of the real

property located at 106 Park Hill Avenue, Massapequa (the "Home").

2.      At all times relevant, Plaintiff has maintained and currently maintain the Home as

her primary, principal residence, residing there with her husband Michael Kolnberger.

3.      Defendant Select Portfolio Servicing, Inc. ("Defendant" or "SPS") is the servicer

of a note executed by Plaintiff (the "Note") and a mortgage on the Home executed by Plaintiff

that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the

"Loan").

4.     The owner of the loan is Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement Relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2006-4 (hereinafter, "Deutsche Bank").

5.     Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) because she is a natural person allegedly obligated to pay the Loan on the Home.

6.     The Loan is a "debt" within the meaning of 15 U.S.C. §1692a(5) because it arose from a transaction in which the money was used for personal, family, or household purposes. Plaintiff incurred the Loan to purchase the Home.

7.     At all times relevant, SPS communicated with Plaintiff in attempting to collect the Loan on behalf of Deutsche Bank.

8.     SPS regularly uses the mails and other instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

9.     SPS regularly and often represents the owners of mortgage notes such as the Note and regularly engages in collection through foreclosure of debts owed by consumers or communicates with mortgagors with respect to the servicing of residential mortgage loans.

10.     SPS is a "debt collector" as defined by 15 U.S.C. §1692a(6).

11.     Servicing of the Loan was transferred to SPS on November 16, 2016. Prior to that time, the Loan had been serviced by Bank of America, NA.

12.     At the time that servicing of the Loan was transferred to SPS, the Loan is alleged to have been in default. SPS is what is colloquially referred to as a "default servicer."

2

13.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Fair Debt Collection Practices Act,  15 U.S.C. §1692, *et seq*. ("FDCPA").

14.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District.

## PLAINTIFF'S ATTEMPTS TO SAVE HER HOME

15.    In late 2014, Michael Kolnberger, husband of the Plaintiff and the primary breadwinner in the Kolnberger household, became gravely ill. His income was lost to the family while he battled his illness.

16.    This caused Plaintiff to encounter financial difficulties including the ability to pay the Loan and soon thereafter, Plaintiff defaulted in her payments.

17.    On August 17, 2015, Deutsche Bank commenced a case to foreclose the Mortgage by filing a complaint in the Supreme Court of the State of New York, County of Nassau, Index No. 007128/2015 (the "Foreclosure Case").

18.    Plaintiff represented herself *pro se* in the Foreclosure Case from approximately November of 2015 through April of 2016.  During this time, she and her husband pursued loss mitigation options with Bank of America and appeared for multiple settlement conferences.

19.    Michael Kolnberger passed away in 2016.

20.    On October 16, 2016, Plaintiff retained counsel to represent her in the Foreclosure Case.

## PLAINTIFF SEEKS LOAN MODIFICATION

21.     Her retained counsel promptly contacted Bank of America to ascertain the status of any pending loss mitigation and for the purpose of updating or supplementing any information previously provided to the Loan servicer by Plaintiff.

22.     Shortly thereafter, on November 16, 2016, serving of the Loan transferred from Bank of America to SPS.

23.     Plaintiff's counsel in the Foreclosure Case promptly sent to SPS - the new servicer of the Loan - an updated loss mitigation application.

24.     By letter dated December 20, 2016, counsel for Deutsche Bank in the Foreclosure case communicated to the court and to Plaintiff that the "client placed the [Foreclosure Case] on hold while the borrower's account is under review for potential loss mitigation options.  A true and correct copy of this correspondence is attached as Exhibit A.

25.      By letter dated March 31, 2017 ("First Denial Letter"), SPS denied Plaintiff any modification of the Loan and offered only a Repayment Plan. A true and correct copy of First Denial Letter is attached as Exhibit B.

26.     In the First Denial Letter, SPS states that it denied Plaintiff a HAMP Tier 1 Trial Modification and a HAMP Tier 2 Trial Modification because "Investor/Guarantor Not Participating."  SPS further states: "We are unable to offer you this program as, pursuant to the servicing agreement governing this account, the owner of your mortgage has the right of approval and has denied this option based on a business decision."

4

27.     In the First Denial Letter, SPS also states that it denied Plaintiff an SPS Trial Modification because: "We service your mortgage on behalf of an investor or group of investors that has not given us the contractual authority to modify your mortgage."

28.     The Repayment Plan which was offered to Plaintiff by SPS in the First Denial Letter  was unaffordable and simply not a realistic option because it called for twelve monthly payments of $4,304.94 each followed by a balloon payment of $99,380.78 in April of 2018.

29.     On April 17, 2017, Plaintiff sent an appeal to SPS (the "First Appeal Letter"), a copy of which is attached hereto as Exhibit C.

30.     In the First Appeal Letter, Plaintiff asserted four grounds for appeal and asked that Plaintiff be reconsidered for loss mitigation.

**FIRST GROUNDS FOR APPEAL**

31.     The denial was appealed on the grounds that the Loan had not yet been considered for relief under the consumer relief provisions of the January 17, 2017 settlement between the United States Department of Justice and Deutsche Bank AG, under which Deutsche Bank has been ordered to provide $4.1 billion for consumer relief including principal forgiveness and loan modifications for financially distressed homeowners.

32.     In 2013, the Department of Justice sued Deutsche Bank for allegedly misleading investors in the packaging, securitization, marketing, sale and issuance of residential mortgage-backed securities between 2006 and 2007. The $4.1 billion consumer relief fund is part of the settlement of that lawsuit. The First Appeal Letter asked that the Plaintiff be considered for assistance under the settlement.

5

**SECOND GROUNDS FOR APPEAL**

33.     The denial was also appealed on the grounds that the loan modification application was improperly denied because a HAMP Tier 1 Trial Modification, a HAMP Tier 2 Trial Modification and an SPS Trial Modification were all denied for reason of investor restrictions. This is a violation of both RESPA Regulations, which require that when a loan modification application is denied because of investor restrictions, specific criteria for denial must be given, and New York State case law, which further requires that reasonable efforts must be made to obtain a waiver from those investor restrictions and that evidence of those investor restrictions be provided to the Defendant.

34.     Section 12 CFR 1024.41(d) of the Real Estate Settlement Procedures Act (Regulation X) states:

> "If the servicer denies a loss mitigation application for any trial or permanent loan modification option, the notice provided to the borrower must also state the servicer's specific reason or reasons for denying each trial or permanent loan modification option, and, if applicable, that the borrower was not evaluated on other criteria. Certain disclosures are required when a servicer denies an application for the following reasons or using the following procedures:
> · Investor criteria and use of a waterfall.
>    o If the servicer denies a loan modification option based upon investor criteria, the servicer must identify the owner or assignee of the mortgage loan and the specific criteria that the borrower failed to satisfy.

35.     The Consumer Financial Protection Bureau's official analysis of Section 12 CFR 1024.41(d) states:

> "If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement,

without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient."

36.     New York State case law has expanded on the RESPA requirements as they pertain to loan modification applications and investor restrictions. In *U.S. Bank N.A. v. Smith*, 999 N.Y.S.2d 468, 470, the court found that the plaintiff negotiated in bad faith because of "Plaintiff's failure to follow guidelines pursuant to the federal Home Affordable Mortgage Program [whose] applicable guidelines required the plaintiff…to attempt to obtain a waiver of an investor prohibition or restriction in lowering the interest rate and to keep such evidence in the loan file. However, despite repeated requests by the referee to produce evidence that the plaintiff attempted to obtain a waiver of the investor restrictions in the PSA, the plaintiff failed to do so [.]"

37.     The requirement that a waiver of investor restrictions be sought extends to loan modification applications not covered by the HAMP regulations. In *Deutsche Bank Natl. Trust Co. v Izraelov*, 977 N.Y.S.2d 666, the court held that a servicer's duties do not end with a mere declaration that investor restrictions prohibit a loan modification, the *Izraelov* court cited Special Referee Deborah Goldstein who argued that, despite the investor restrictions, the requirements of HAMP were still applicable.

 "…[I]f a servicer was restricted or prohibited from freely performing or taking the modification step,… documentation should show that it made reasonable efforts to seek a waiver from the applicable investor and whether the requested waiver was approved or denied." *Id.*

38.     The plaintiff countered that "any citation to HAMP provisions…are inapposite [in that] HAMP regulations only apply to HAMP participants of which Plaintiff is not." *Id.* The court ruled otherwise, however, stating that "whether or not the loan qualifies for HAMP or not, the most appropriate benchmark for good faith are the HAMP guidelines…A plaintiff's failure to comply based solely on an assertion that HAMP regulations or guidelines do not apply would, at the least, be material to whether the plaintiff is negotiating in good faith as required by CPLR. 3408(f)." *Id.*

39.     The court ruled that when investor regulations prohibit loan modifications, the plaintiff is obligated to provide evidence of that restriction and to seek a waiver of those restrictions:

> "At the very least…a plaintiff who contends that it cannot agree to a loan modification or other arrangement that would allow a defendant to stay in his or her home because of an 'investor' prohibition or restriction must provide the court or referee with suitable documentary evidence of the obstacle, and the court or referee may appropriately direct its production. … Assuming the prohibition or restriction to exist…the plaintiff has an obligation to proceed in good faith to obtain, what has been called, a "waiver" of the prohibition or restriction in the particular action. The court or referee may require the plaintiff to provide evidence of compliance[.]"

40.     Per the above authorities, the First Appeal Letter included a request that SPS provide supporting documents for the investor restrictions that were the basis for the denial. On or about June 20, 2017, a letter was received from SPS which denied without explanation this request for supporting documentation. This letter ("The Document Denial Letter") is attached hereto as Exhibit D.  The Document Denial Letter simply states that SPS is "in receipt of your recent request for information about the loan. We regret to inform you that we are unable to

fulfill your inquiry for the documentation requested." The Document Denial Letter clearly puts

SPS in violation of the above-cited RESPA Regulations and New York State case law.

### THIRD GROUNDS FOR APPEAL

41.     The denial was also appealed on the grounds that Plaintiff should be granted a

HAMP loan modification per the analysis conducted on pages 5-9 of the First Denial Letter

because the HAMP analysis of the loan was already in progress when the loan was service

transferred from Bank of America (a HAMP participant) to SPS and per the authorities cited

below, it was therefore incumbent on the SSPS to continue the HAMP analysis, and it was also

incumbent on SPS to continue that analysis past the Making Home Affordable program's

termination date of December 30, 2016.

42.     On November 16, 2016, Plaintiff's Loan was service transferred from Bank of

America, a HAMP participant, to SPS. At the time of the transfer, an active HAMP analysis was

ongoing. Per MHA regulations, it was incumbent on SPS to continue the HAMP analysis begun

by Bank of America. Section 1.4.1 of the Making Home Affordable handbook, Version 5.1,

dated May 26, 2016 (the "MHA Handbook") ("Transfers of Servicing / Transfer of Eligible

Loans") states as follows:

> "When a participating servicer transfers or assigns mortgage loans, or servicing
> rights relating to mortgage loans, that constitute Eligible Loans pursuant to the
> SPA, the transferee servicer must assume the transferor's obligations under the
> SPA with respect to the transferred Eligible Loans. A transferring servicer may
> not use a transfer to circumvent its existing obligations under the SPA." [1]

---

[1] "SPA" is defined as the Servicer Participation Agreement that participating servicers had to register with the MHA
program administrator. Loans that constitute "Eligible Loans" are as defined in that SPA.

43.     Furthermore, that HAMP analysis should have continued even though the HAMP program terminated six weeks after the Loan was transferred to SPS. Making Home Affordable Supplemental Directive 16-02, "Making Home Affordable Program – MHA Program Termination and Borrower Application Sunset" states that "a borrower who submits an Initial Package [2] on or before [the MHA program termination date of] December 30, 2016 must be evaluated for HAMP, provided that such borrower meets all applicable eligibility criteria set forth in Section 1 of Chapter II."

44.     Plaintiff met both requirements of Supplemental Directive 16-02. First, she submitted an Initial Package to Bank of America, the original servicer and a HAMP participant, in August of 2016. The HAMP analysis was still underway when the Loan was service transferred to SPS on November 16, 2016. Second, her loan meets all the applicable eligibility criteria set forth in Section 1 of Chapter II of the MHA Handbook in that (i) her loan is a first lien mortgage loan originated on or before January 1, 2009, (ii) her property had not been condemned, (iii) she has documented a financial hardship, (iv) she has agreed to set up an account for taxes and hazard and flood insurance, (v) the unpaid principal balance for her single family house is less than $729,750, (vi) the mortgage loan is secured by a one-family property and (vii) the borrower submitted an Initial Package on or before December 30, 2016.

**FOURTH GROUNDS FOR APPEAL**

45.     The denial was also appealed on the grounds that Plaintiff should be granted a HAMP loan modification per the analysis conducted on pages 5-9 of the First Denial Letter

---

[2] "Initial Package" is defined in Chapter 2, Section 4 of the MHA Handbook as (i) the RMA form, (ii) form 4506-T, (iii) evidence of income and (iv) Dodd Frank Certification.

because a loan modification analysis under HAMP and SPS programs had been promised during the application process and because SPS's conduct in repeatedly requiring updated documents indicated that such an analysis was being conducted.

46.     The First Denial Letter stated Plaintiff's Loan could not be considered for a HAMP Tier 1, HAMP Tier 2 and SPS Trial Modification because the investor did not participate in those programs. The words and the actions of SPS during the loan modification analysis period, however, gave every indication that Plaintiff's Loan modification application was being considered for those programs.

47.     Following is a partial record of her counsel's conversations with and document requests by SPS:

- On November 16. 2016, Ms. Kolnberger's mortgage loan was service transferred to the Servicer.

- On November 28, 2016, I had a phone conversation with Ms. Tacarra King of the Servicer. I informed her that we were in the middle of a loan modification analysis with the previous servicer when the loan was service transferred, and I asked her what, if anything, she needed to continue this process. She gave me a list of documents and advised that the loan would be analyzed for a HAMP Tier 1 loan mod, HAMP Tier 2 loan mod, SPS Program modification and a repayment plan. The requested documents were promptly provided.

- On December 21, 2016, I had a phone conversation with Ms. Michele Kiefer of the Servicer who advised me which additional documents were needed for the loan

11

modification analysis, including which documents would be needed in order for 100% of Ms. Kolnberger's mother's social security income to be used as contributory income. These additional documents were promptly provided.

- On January 11, 2017, I had a phone conversation with Mr. Chris Krukowski of the Servicer who informed me that two more bank statements were needed to show rental deposits. These were promptly provided.

- On February 17 or 18 I had another phone conversation with Mr. Krukowski who informed me that additional documents relating to deposit of Mr. Kolnberger's mother's social security check were needed. These were promptly provided.

48.     Again, the words and the actions of SPS indicated that Plaintiff was being considered for a loan modification. To now suddenly reverse course and say she was not and basically never was, indicates that SPS was acting in bad faith throughout the loan modification process. In this respect, the facts of this case mirror the facts of *U.S. Bank N.A. v. Williams*, cited above as an example of bad faith negotiations in that the plaintiff in this case put the borrower through a lengthy loan modification process even though the plaintiff knew all along that investor restrictions allegedly prohibited the loan modification. That SPS would behave in this manner even as Deutsche Bank was signing off on what has been described as the largest fine ever levied by the Department of Justice - more than half of which was earmarked to assist homeowners in distress - is unconscionable conduct.

**The Second Denial Letter and the Second Appeal Letter**

49.     On or about May 12, 2017, a second denial letter was received. (This letter, the "Second Denial Letter," is attached hereto as Exhibit E ) The Second Denial Letter did not address the four grounds for appeal provided in the First Appeal Letter and as outlined above. The Second Denial Letter only stated, without further elaboration, that "In response to your appeal of the decision notice dated March 31, 2017, SPS complies with all relevant state and federal requirements in connection with the servicing of your client's lien. SPS respectfully disagrees with your suggestion that SPS has violated applicable law in regard to reviewing your client's account for loss mitigation."

50.     The Second Denial Letter ended by referring Plaintiff to the above-mentioned Mr. Chris Krukowski, who the letter identified as SPS's Relationship Manager for this matter. At about the same time, Plaintiff received an email from the Deutsche Bank Consumer Relief Group in charge carrying out the consumer relief provisions of the above-described Justice Department Settlement. The Consumer Relief Group email also referred Plaintiff to Mr. Krukowski, saying that the servicer "is solely responsible for servicing the loans in the Trust, including such loan servicing activities as loan modification and loan forgiveness." This directly contradicts the reason given for the denial in the First Denial Letter, which points to investor guidelines, not the servicer, as the reason for the denial.

51.     In response to the Second Denial Letter, Plaintiff sent a second appeal letter to SPS on or about June 10. (This letter, the "Second Appeal Letter," is attached hereto as Exhibit F). Just prior to that, however, a letter was received from SPS which detailed other options,

besides loan modification, that might be available to the Plaintiff. (This letter, the "Option Letter," is attached hereto as Exhibit G.) The Option Letter offered a payment deferral option which it described as follows: "With this program, your account will become contractually current by adding the past due payments to the end of your loan."

52.     The Second Appeal letter repeated the four grounds for appeal that were presented in the First Appeal Letter, as those four grounds had as yet gone unaddressed, and also asked that SPS consider the Plaintiff for the payment deferral option.

53.     Plaintiff has failed to negotiate modification of the Loan in good faith pursuant to PLR § 3408(f) and 22 NYCRR § 202.12-a (4). SPS acted in the following bad faith conduct:

- SPS has wasted judicial resources and acted in a harmful and deleterious manner by not responding to the four issues raised in the First Appeal Letter, by ignoring the Second Appeal Letter, and by filing pleadings in the Foreclosure Case indicating that the modification process was over and that case should therefore move forward to foreclosure.

- SPS has violated RESPA and New York State case law by not providing specific information about the investor guidelines that allegedly prohibit a loan modification in this instance, and by refusing to seek a waiver of those restrictions, and by refusing to provide supporting documentation regarding those provisions.

- SPS has denied the Plaintiff a loan modification without setting forth grounds.

- SPS has caused delay and confusion by asserting in the First Denial Letter that Investor restrictions necessitated their denial, but then in an email asserting that the servicer is "solely responsible" for loan modification and loan forgiveness.

- SPS caused the Plaintiff to submit multiple financial documents and applications even though they knew that investor restrictions allegedly prohibited the Plaintiff from modifying the loan.

## COUNT ONE

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692k

54.     Plaintiff restates and incorporates herein each of her statements and allegations contained in paragraphs 1 through 54 in their entirety, as if fully rewritten herein.

55.     15 U.S.C. §1692(f) provides in relevant part:

**False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15

56.     SPS violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

68.     SPS violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

69.     The Foreclosure initiated by SPS against the Plaintiff remains pending, and the Plaintiff continues to accrue additional legal fees and costs.

70.     In addition, SPS's conduct has caused the Plaintiff to suffer great emotional distress driven by the fear that she might lose her home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

71.     SPS's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the Plaintiff's rights.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted,

*/s/ Javier Merino*
Javier Merino, Esq.
Dann & Merino, P.C.
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
(201) 355-3440- Direct
(216) 373-0539- Main
(216) 373-0536- Fax
notices@dannlaw.com
*Co-Counsel for Plaintiff*

*/s/ Charles Wallshein*
Charles Wallshein, Esq.
35 Pinelawn Rd
Suite 106E
Melville, NY, 11747-2508
(631) 824-6555- Main
(631) 824-6558- Fax
cwallshein@wallsheinlegal.com
*Co-Counsel for Plaintiff*

17